NOT FOR PUBLICATION                                                                          CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| PAUL MASELLI, in his official capacity as disbursing agent, | : : : : | |
| Plaintiff, | : : | Civ. No. 06-4716 (JAP) |
| v. | : : : | OPINION |
| PORTFOLIO TECHNOLOGIES, INC. et al., | : : | |
| Defendants. | : : | |

PISANO, District Judge.

Plaintiff Paul Maselli ("Maselli" or "Plaintiff"), in his capacity as disbursing agent, brought this action alleging that Defendants Portfolio Technologies, Inc. ("PTI"), Global Protection Corporation ("Global Protection"), and Pleasure Plus (together "Defendants") breached an Asset Purchase Agreement that the parties entered into pursuant to a plan of liquidation confirmed in a bankruptcy proceeding, *In the Matter of Reddy Laboratories International, Ltd.*, No. 95-3332 (KF) (Bankr. D.N.J. Mar. 24, 1999).  Currently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b) on the following alternative grounds:  (1) lack of subject matter jurisdiction, (2) improper venue, and (3) failure to state a claim upon which relief can be granted.  For the reasons stated below, the Court dismisses Plaintiff's Complaint for lack of subject matter jurisdiction, without prejudice to re-file before the Bankruptcy Court.

**I. BACKGROUND**

This is a breach of contract action arising out of an Asset Purchase Agreement involving the assets, properties, and rights owned by the bankruptcy estate of Reddy Laboratories, Ltd. ("Reddy").[1]  On December 19, 1995, the United States Bankruptcy Court for the District of New Jersey appointed Plaintiff as Chapter 11 Trustee in the Reddy matter.  In his capacity as Trustee and pursuant to the Third Modified Plan of Liquidation (the "Plan"), Maselli executed an Asset Purchase Agreement (the "Agreement") dated August 26, 1998 with Defendant PTI, an Illinois corporation.  Pursuant to Article II of the Plan, the Agreement—and PTI's performance of its obligations thereunder—comprised the sole means for execution and consummation of the Plan.

In accordance with the terms of the Agreement and its amendments,[2] PTI received all of the assets, properties, and rights owned by Reddy in exchange for (1) an initial purchase price of $100,000, (2) deferred payments totaling $75,000, (3) an annual payment equaling 10% of PTI's gross sales revenues beginning February 28, 2000, and (4) annual payments consisting of half of all royalties collected from unaffiliated third-party licensees of PTI's patent assets.  Under the terms of the Plan, Maselli is the disbursing agent for the receipt and distribution of funds received in connection with the Agreement.  The Agreement includes a Security Agreement that provides, in part, that Maselli, as the secured party, may enforce all rights and remedies under applicable provisions of the Uniform Commercial Code in the event of default by PTI.

---

[1] The assets, properties and rights subject to the Agreement include, *inter alia*, patents, patent applications, trademarks and other intellectual property associated with a product known as the "Pleasure Plus Condom."

[2] The parties have amended the Agreement on two occasions, at the request of PTI.  PTI did not insist on bankruptcy court approval or affirmation of either amendment.

On October 2, 2006, Maselli filed a Complaint before this Court alleging breach of contract on the part of PTI, Global Protection and Pleasure Plus for failure to make the annual 10% gross revenue sales payment and the royalties payment, as required under the Agreement. Though neither Global Protection nor Pleasure Plus is a party to the original Agreement, Plaintiff included them as defendants because he believes that both have assumed some or all of PTI's obligations under the Agreement, demonstrated by the fact that, according to Plaintiff, Global Protection and Pleasure Plus have made some of the required payments.[3]  In addition to the claim for breach of contract, Plaintiff seeks several other forms of relief including an accounting of the assets subject to the Agreement, an order permitting him to perfect his interest in collateral subject to the Agreement, compensatory damages, punitive damages, and attorney's fees.

Maselli filed his Complaint in federal district court despite the existence of several jurisdiction retention provisions purporting to preserve bankruptcy court jurisdiction over matters relating to the Plan and the Agreement.  First, Article X of the Plan provides that the Bankruptcy Court "shall retain exclusive jurisdiction of all matters arising out of, and related to, th[e] Chapter 11 case and Plan," including, *inter alia*, (1) "[t]o enable the Trustee to consummate the Plan of Liquidation and to resolve any disputes arising with respect thereto" and (2) "[t]o adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Trustee."  Second, a September 28, 1998 Bankruptcy Court Order approving the Agreement contains a clause providing that the Bankruptcy Court retains exclusive

---

[3] Defendant Global Protection serves as the distributor of the products PTI purchased via the Agreement, including the Pleasure Plus Condom.  The parties dispute whether Pleasure Plus is a legal entity.  To the extent that it is a legal entity, it is unclear what role Pleasure Plus plays in PTI's business operations.

jurisdiction, *inter alia*, "to resolve any disputes which may arise in connection with the Agreement and [the] Order" and "to enforce the terms of the Agreement and [the] Order."  Third, a March 24, 1999 Bankruptcy Court Order Confirming the Trustee's Third Modified Plan of Liquidation, which incorporated the earlier order approving the Agreement, notes that the Bankruptcy Court would "retain jurisdiction to enforce or interpret the provisions of . . . the Plan and the . . . Agreement."

Defendants move to dismiss Plaintiff's Complaint on several grounds, including lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief may be granted.  Further, Defendants assert that neither Global Protection nor Pleasure Plus can be found liable for breach of contract because they are not parties to the Agreement.  Having reviewed the parties' briefs and the relevant documents, the Court concludes that it lacks subject matter jurisdiction to resolve this dispute.  Therefore, the Court dismisses Plaintiff's Complaint on jurisdictional grounds and declines to address the parties' other arguments.

## II.  DISCUSSION

### A.  Standard of Review under Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for "lack of jurisdiction over the subject matter."  Before turning to the merits of Defendants' argument, the Court must determine whether this is a facial or factual challenge to jurisdiction. *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).  A facial challenge involves only the allegations in the pleadings, which the court must construe in a light most favorable to the plaintiff. *Id.*  Where there is a factual challenge, however, "it is permissible for a court to review evidence outside the pleadings." *Id.*  Here, Defendants'

jurisdictional attack deals not with any alleged pleading deficiency, but instead with the Court's power to hear the case in light of the various retention of jurisdiction provisions. Thus, the Court will treat Defendants' motion as a factual challenge and will consider evidence that Defendants have submitted with their brief, namely the Plan, the Agreement, and the September 28, 1998 and March 24, 1999 Orders of the Bankruptcy Court. Notably, Plaintiff did not object to the submission or consideration of those documents.

### B. Analysis

Although, as the Court has noted, there are several retention of jurisdiction provisions that appear to preserve bankruptcy court jurisdiction over this dispute, those provisions will be given effect only if bankruptcy court jurisdiction actually exists in this case. *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 161 (3d Cir. 2004) ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction."). "Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement . . . ." *Id.* Further, a court cannot create jurisdiction merely by "stating it has jurisdiction in a confirmation or other order." *Id.* Thus, the Court must decide whether the Bankruptcy Court has subject matter jurisdiction over this dispute apart from the retention of jurisdiction provisions set forth in the Plan and the Bankruptcy Court orders. *Id.* ("If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions . . . are fundamentally irrelevant.").

Bankruptcy court jurisdiction extends to two types of proceedings: core proceedings and non-core proceedings. Core proceedings include "cases under title 11," "proceedings arising under title 11," and "proceedings arising in a cause under title 11." *Id.* at 162. Some examples

of core proceedings include "matters concerning the administration of the estate," "confirmations of plans," "orders approving the sale of property resulting from claims brought by the estate against persons who have not filed claims against the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2). Under § 157, a core proceeding is one that "invokes a substantial right provided by title 11" or "by its nature, could arise only in the context of a bankruptcy case." *In re Guild & Gallery Plus*, 72 F.3d 1171, 1178 (3d Cir. 1996). Though Defendants assert that the instant action is a core proceeding, they fail to identify a substantial title 11 right that this proceeding invokes. Nor do they explain how this breach of contract claim, "by its nature, could only arise in the context of a bankruptcy case." *Id.* Accordingly, the Court concludes that this action is not a core proceeding.

That conclusion, however, does not resolve the jurisdiction issue. To the extent that this action constitutes a non-core proceeding, *i.e.*, one that is "related to a case under title 11," bankruptcy court jurisdiction will obtain. *In re Resorts Int'l, Inc.*, 372 F.3d at 162, 163. Non-core proceeding or "related to" jurisdiction exists where "the outcome of th[e] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Notably, however, where the proceeding at issue arises after the confirmation of a plan, "the scope of bankruptcy court jurisdiction diminishes." *In re Resorts Int'l, Inc.*, 372 F.3d at 165.[4] Nevertheless, "the bankruptcy court may take action to

---

[4] To be sure, there is statutory authority for post-confirmation jurisdiction. Indeed, 28 U.S.C. § 1344 provides the source for such jurisdiction. Further, 11 U.S.C. § 1142(b) empowers the bankruptcy court to "direct the debtor and any other necessary party . . . to perform any other

ensure the consummation of a confirmed plan" and "entertain other post-confirmation actions as well." *Id.* at 166; *United States Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999). To establish bankruptcy court jurisdiction after the confirmation of a plan, "the claim must affect an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding." *In re Resorts Int'l, Inc.*, 372 F.3d at 167. As Plaintiff concedes, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*

Applying that standard to this case, the Court finds that there is a close nexus between Maselli's claims and the Plan sufficient to uphold bankruptcy court jurisdiction. As Article II of the Plan demonstrates, PTI's performance of its obligations under the Agreement is essential to the consummation and execution of the Plan:

> The means for execution and consummation of the Plan are set forth herein. The funds to pay creditors will be received from the sale of the estate assets to Portfolio Technologies, Inc. ("PTI"), an Illinois corporation. The Asset Purchase Agreement between the Trustee and PTI is available from the attorneys for the Trustee, upon request. Its terms are incorporated into the Plan. Nothing contained in this Plan shall modify the terms of the Asset Purchase Agreement. At the closing of the sale of the assets to PTI, PTI will pay the Disbursing Agent $100,000.00, plus $75,000.00 payable at $5,000.00 per month for fifteen (15) months. In addition, PTI will pay the Disbursing Agent the Downstream Plan Payments. Based on PTI's projections, it is estimated that, within seven years of the closing, creditors will receive full payment of their claims. The Trustee will retain a security interest in all of the assets sold to PTI and the proceeds of same to secure PTI's obligations under the Asset Purchase Agreement and Plan. The Trustee is selling the assets of the Debtor to PTI free and clear of all other claims, interests, liens and encumbrances.

---

act . . . that is necessary for the consummation of the plan." In addition to statutory authority for post-confirmation jurisdiction, Federal Rule of Bankruptcy Procedure 3020(d) states that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate."

Not only is the Agreement incorporated into the Plan, but the parties cannot consummate nor fully execute the Plan without PTI performing on the obligations it assumed pursuant to the Agreement.  This dispute arises directly out of PTI's performance or, as Maselli alleges, non-performance of those obligations.  Thus, Plaintiff's claim is a "[m]atter that affect[s] the . . . consummation, execution, or administration of the confirmed plan." *In re Resorts Int'l, Inc.*, 372 F.3d at 167. Moreover, this action, which seeks to carry out the terms of the Plan and the Agreement, requires the Bankruptcy Court to do no more than construe the terms of the confirmed Plan and determine whether PTI has complied with those terms.  *See id.* at 167-68 (noting mere interpretation of plan is an appropriate basis for "related to" jurisdiction). Therefore, this action has the requisite close nexus to uphold bankruptcy jurisdiction.  That finding, combined with the fact that the Plan and Bankruptcy Court orders contain retention of jurisdiction provisions, two of which provide for exclusive bankruptcy court jurisdiction, compel the Court to conclude that it lacks subject matter jurisdiction over this dispute.  Accordingly, the Court dismisses Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and grants him leave to re-file before the Bankruptcy Court.

### III. CONCLUSION

For the reasons expressed above, the Court dismisses Plaintiff's Complaint for lack of jurisdiction and grants Plaintiff leave to re-file before the Bankruptcy Court.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano<br>
JOEL A. PISANO, U.S.D.J.

Dated:  March 12, 2007